UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   For Online Publication Only
PATOMA PARTNERS LLC,

                         Plaintiff,   **ORDER**
                                                14–CV–2529 (JMA)

   -against-

MB1 CAPITAL PARTNERS, LLC, MB1 BELMAR,
LLC, and MB1 MARCY, LLC,

                        Defendants.
------------------------------------------------------------------X

A P P E A R A N C E S:

Donald F. Schneider
Mark E. Klein
Silverman Sclar Shin & Byrne PLLC
381 Park Avenue South, 16th Floor
New York, NY 10016
    *Attorneys for Plaintiff*

Philip C. Korologos
Christopher Daniel Belelieu
Boies, Schiller & Flexner LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
    *Attorneys for Defendants*

**AZRACK, United States Magistrate Judge:**

The parties' familiarity with the basic facts underlying this dispute is assumed. Defendants contributed $390,000 (65%) towards the parties' joint venture and Patoma contributed $210,000 (35%). Patoma maintains that, upon the sale of the Ground Leases by the four Limited Liability Companies ("LLCs"), Patoma is entitled to more than the 35% share attributable to its capital contribution. Defendants assert that the distribution of the proceeds should be in accordance with the parties' capital contributions.

For the reasons stated below, the Court finds in favor of defendants. The proceeds from the sale of the Ground Leases shall be distributed according to the parties' respective capital contributions.

## A. The New York LLC Law

New York's Limited Liability Company Law (the "NYLLCL") provides that

> *Distributions of cash* or other assets of a limited liability company *shall be allocated* among the members, and among classes of members, if any, *in the manner provided in the operating agreement*, which may, among other things, establish record dates for distributions. *If the operating agreement does not so provide, distributions shall be allocated on the basis of the value, as stated in the records of the limited liability company, if so stated, of the contributions of each member*, but not including defaulted obligations to make contributions, to the extent they have been received by or promised to the limited liability company and have not been returned to any such member.

NYLLCL §504 (emphasis added). Section 503 of the NYLLCL concerning sharing of "profits and losses" contains similar language.

## B. The "Promote" in Exhibit A Does Not Constitute a Binding Agreement

Patoma contends that the "Promote" provision contained in Exhibit A of the parties' April 25, 2013 Agreement governs the parties' dispute over how the proceeds from the sale of the Grounds Leases should be distributed.[1] The parties' September 3, 2013 Agreement, which memorialized the parties' joint venture, states that the parties "intend to continue to prepare the documentation, including an Operating Agreement, for their joint venture to ground lease for

---

[1] This provision, entitled "Equity/Return/Promote," states:

> Patoma will contribute 35% of the Equity requirement, which shall be in the form of a single entity controlled by Patoma. A 10% preferred return shall be paid to the Equity. Promote structure for Patoma of 35% after a 10% IRR, then 50% after a 20% IRR to the Equity.

If Patoma is correct and the Promote provision is enforceable, Patoma would recover more than 35% of the distributions from the sale of Ground Leases if the sale price for the Ground Leases exceeds a certain price. According to Patoma's calculations, that threshold sale price is approximately $700,000.

2

development and operation, the Property. The Operating Agreement shall include substantially the terms stated in Exhibit A." The parties, however, never agreed on an operating agreement.

Nevertheless, Patoma asserts that the parties agreed to be bound by the Promote. The Court disagrees. Patoma has failed to establish that the parties, which never agreed on an operating agreement, are bound by the Promote contained in Exhibit A. See Brown v. Cara, 420 F.3d 148, 153–159 (2d Cir. 2005) (discussing differences between Type I preliminary agreements and Type II preliminary agreements).

Additionally, the Court notes that Patoma alleged, in its complaint, that the parties' agreements are silent concerning "essential terms" such as "compensation . . . of the proposed joint venturers" because, *inter alia*, "with respect to [the Promote] there is no provision regarding profits and losses (as opposed to return on equity), *distribution* of cash from operations, *sales* or refinancing, or tax credits." Compl. ¶ 39(ii) (emphasis added). After the parties filed their briefs, Patoma filed an amended complaint omitting key portions of this language. The parties then exchanged pre-motion conference letters concerning the propriety of Patoma's amended complaint. Even assuming that Patoma's amended complaint is procedurally permissible and that Patoma's argument is not barred by principles of judicial estoppel—both somewhat doubtful propositions—Patoma is still left with the fact that the Promote does not address distribution of

cash from sales.[2]

In sum, the parties did not agree to be bound by the Promote in Exhibit A, particularly with respect to the early sale of the Ground Leases at issue.

**C. Patoma Has Not Met Its Burden to Establish that its Share of the Distributions Should be Increased Based on the Services and Property that Patoma Contributed to the LLCs**

Section 501 of the NYLLCL provides that "[t]he contribution of a member to the capital of a limited liability company may be in cash, *property or services rendered* or a promissory note or other obligation to contribute cash or property or to render services, or any combination of the foregoing." NYLLCL § 501 (emphasis added).

As noted earlier, when the operating agreement does not address distributions, the default rules of the NYLLCL provides that "distributions shall be allocated on the basis of the value, as stated in the records of the limited liability company, if so stated, of the contributions of each member . . . ." NYLLCL § 504.

As an initial matter, defendants argue that the phrase "as stated in the records of the limited liability company, if so stated" bars any consideration of Patoma's contributions of services and property because, unlike the parties' capital contributions, those services and property are not listed in the records of the LLCs. The Court does not agree with defendants' interpretation of Section 504.

---

[2] The Court notes that, according to one recent real estate financing article, the question of when a developer's promoted interest vests is a "critical question[]." Stevens A. Carey, Real Estate JV Promote Calculations: Basic Concepts and Issues, Real Estate Finance Journal at 22–23 (updated Summer 2013) (Thomson Reuters) (available at http://www.pircher.com/media/publication/50_SACArticle.pdf). The article explains that:

> [o]f course, the service partner would prefer a promote that is permanently vested from the moment the partnership is formed. The service partner may argue that the value has already been created and it should not be deprived of the promote regardless of what may happen in the future. The financial partner, by contrast, may view the promote as incentive compensation for future value to be created and future burdens to be borne rather than as a brokerage commission for locating the property and closing the transaction.

Id. at 23.
4

Few courts have even discussed Sections 503 and 504 of the NYLLCL. However, one recent decision suggests that, in determining the value of a member's services, it is appropriate to look at services the members performed even if those services, and the corresponding value of those services, are not memorialized in the records of the LLC. See In re Eight of Swords, LLC, 96 A.D.3d 839 (N.Y. App. Div. 2d Dep't 2012); In re Dicenso v. Wallin, No. 101642010, 2011 WL 10819875 (N.Y. Sup. Ct. Kings Cty. Jan. 2, 2011) (unpublished trial court order)[3]; cf. Bedzek v. Goz, No. 6500032008, 2011 WL 11074363 (N.Y. Sup. N.Y. Cty. Mar. 3, 2011) (unpublished trial court order) (finding that where the LLC had "had no operating agreement, and the parties dispute the respective contributions the Parties made to [the LLC], an issue of fact exists regarding the share of profits and losses to which each party was entitled"). This common sense approach is persuasive.

The Court rejects defendants' argument that Patoma's services are categorically excluded from consideration because, unlike the parties' capital contributions, those services (and their corresponding value) are not listed in the LLCs' records. This interpretation is consistent with the language of the statute. The language defendants cite appears to be focused on the situation where the members have previously agreed on the value of the contributions at issue.

The Court must now determine the value of the services (and property) provided by Patoma. Neither party points to any authority indicating how these values should be calculated and the Court has found no New York authority addressing this issue. The Court concludes that the fair market value of these services at the time they were rendered is the appropriate metric for

---

[3] The decisions of the Appellate Division and the trial court in Eight of Swords include few facts. However, the briefs the parties filed with the Appellate Division provide more facts and indicate that, in determining the contributions of the two members, the trial court focused on the time and effort each member put into the LLC. Nothing in those papers suggests that the trial court categorically excluded from consideration any services that were not memorialized in the LLC's records. In fact, those papers suggest the contrary.

measuring the value of Patoma's services.[4]  The burden of proving the fair market value of the services and property provided should be placed on the party seeking compensation for those services—in this case, Patoma.  Patoma has not met this burden.

Patoma's "estimates" of the value of the services it provided are speculative and have no evidentiary basis.  For example, according to Patoma, it came up with the idea of the Ground Leases and negotiated the Ground Leases with the property owners.[5]  Patoma then asserts that the value of these services related to the Ground Leases equals the entire fair market value of the Ground Leases.  This argument is absurd.

Patoma also estimates that it is entitled to $25,000 for managing the Properties for eleven months and $10,000 for its attempts to negotiate an expanded lease for one of the tenants.  Patoma, however, does not provide any details concerning these management responsibilities or the amount of time it expended on these tasks.  Nor does Patoma provide any evidentiary basis to support its "estimates" concerning the fair market value of these services.

Finally, Patoma claims that it contributed property to the LLCs.  This property consists of Patoma's development plan, which Patoma contends is valuable intellectual property worth $200,000.  The Court fails to see how this contribution provided any value to the LLC given that no development ever occurred.  Moreover, Patoma has provided no evidence, other than its

---

[4]  Although the NYLLCL does not address this issue, the Court notes that Arizona's LLC statute explicitly provides that, for purposes of making distributions, if an LLC's operating agreement does not specify the value of a member's contribution of services or provide a manner for determining that value, the services will be valued at "the fair market value of the services at the time they are rendered."  Arizona Limited Liability Company Act, Arizona Revised Statutes § 29-703(C).  The Arizona law applies a similar standard to contributions of property.  Id.

[5]  Defendants provide a rather conclusory declaration that seeks to controvert this fact and to establish that Defendants also provided valuable services to the LLCs.

principals' own "estimate," concerning the fair market value of the development plan.[6] Patoma's claims regarding the other services it provided are all similarly flawed.

In light of the above, the Court concludes that the distributions from the sale of the Ground Leases shall be distributed amongst the parties in accordance with their capital contributions—65% to defendants and 35% to Patoma.

SO ORDERED.

Dated: August 15, 2014
      Brooklyn, New York

                                                        _____/s/_(JMA)_____
                                                        JOAN M. AZRACK
                                                        UNITED STATES MAGISTRATE JUDGE

---

[6] Patoma also points out that only its principals personally guaranteed the Ground Leases. Patoma, however, does not even attempt to place a specific value on these personal guarantees. Instead, Patoma simply lumps these guarantees with its development plan, and "estimates" that those combined contributions are worth $200,000.